## Will Long v. The State.

### No. 1416. Decided June 15, 1898.

#### 1.  Theft—Continuance—New Trial—Alibi.

On a trial for theft of mules, where the evidence for the State adduced upon the trial was wholly circumstantial, it is Held, that a new trial should be granted based upon an application for continuance for the testimony of a witness which would establish an alibi, where such testimony is probably true

#### 2.  Theft—Ownership and Possession—Allegation and Proof.

On a trial for theft of mules, where the indictment alleged ownership and possession in A B. S., and the evidence showed that they had been left by A. B. S. with one P., who looked after, salted, and fed them; and that A. B. S. resided some distance from the farm upon and about which they ranged. This raised the issue of possession, and the court should have given defendant's requested instruction, to the effect that, if the jury believed that P. had the care, custody, and control of the animals at the time they were stolen, they would acquit defendant.

#### 3.  Indictment—Test as to Offenses Included In.

Where offenses are of the same character, in order to test the question whether an indictment for one offense includes the other, the indictment for the one offense must contain all the essential elements of the other, otherwise the prosecution for the latter can not be maintained under the indictment.

#### 4.  Indictment—Theft of Animals—Driving Stock From Accustomed Range.

An ordinary indictment for theft does not include a charge of willfully driving stock from its accustomed range without the consent of the owner, and a conviction for the latter offense can not be had under an indictment only charging theft generally.  [Overruling, upon this point, Counts v. State, 37 Texas, 593: Campbell v. State, 42 Texas, 591; Bawcom v State, 41 Texas, 189; Marshall v State, 4 Texas Crim. App., 549; Powell v. State, 7 Texas Crim. App., 467; Turner v. State, 7 Texas Crim. App., 596; Foster v. State, 21 Texas Crim. App., 80; Smith v. State, 21 Texas Crim. App., 133; Guest v State, 24 Texas Crim App., 530.]

. Appeal from the District Court of Montague.  Tried below before Hon. D. E. Barrett.

Appeal from a conviction for theft of mules; penalty, two years imprisonment in the penitentiary.

No statement required.

*W. S. Jameson* and *W. C. Newman,* for appellant.

*W. W. Walling* and *Mann Trice,* Assistant Attorney-General, for the State.  [No briefs on file for the State.]

Henderson, Judge.—Appellant was convicted of theft of mules, and his punishment assessed at two years confinement in the penitentiary, and prosecutes this appeal.

By his first bill of exceptions appellant questions the action of the court in overruling his motion for a continuance and his motion for a new trial predicated on the same ground.  The absent witnesses were Louis Ables and John Nichols, both alleged to be residents of Montague County, and who had been duly subpoenaed, but failed to attend at the trial.  We think the diligence used was sufficient.  Appellant proposed

to prove an alibi by these witnesses. The testimony on the part of the State showed that the mules in question were taken in Clay County, near the little place of Newport, twelve or fourteen miles from the town of Bowie, in Montague County. The mules were found in the possession of the defendant and one Clark, between Bowie and Montague, on the evening of the 6th of May, about three or four miles west of the latter place, and about six or eight miles east of Bowie. The application shows that appellant expected to prove by the witness Louis Ables that he saw defendant come into the witness' chile stand about daylight on the morning of the 6th of May, 1895. This may be true, and yet it would not prove an alibi for appellant. On the contrary, it would be consistent with the State's case, for the theory of the State is that appellant stole the mules early on the night of the theft, and drove them through Bowie, and he could well have been there early on the morning of the 6th of May, as it was only twelve or fourteen miles from Newport. However, by the witness John Nichols, defendant's application shows that he expected to prove that appellant was in Bowie at 8:30 o'clock on the night of the 5th of May, and remained there all night. This testimony, if true, would be a complete alibi for appellant. The State's case was purely circumstantial, and we do not feel authorized to say that the testimony of this absent witness was not probably true.

Appellant insists that the court should have given the instruction asked by him to the effect that, the indictment having charged the possession to be in A. B. Snow, the State must prove that fact, and, if the jury believed that T. P. Pickens had the care, custody, and control of the alleged stolen animals, they would find appellant not guilty. We have examined the evidence on this point, and it occurs to us that there is enough testimony to have required the giving of the requested instruction. The mules in question belonged to Snow. He, however, did not live on his farm, but lived in the town of Newport, some two miles distant. His farm was rented to Pickens. He left three mules in charge of Pickens, and they were first kept in the pasture. Subsequently they were turned out on the range, and ran with Pickens' mules, and Pickens looked after them, and salted and fed them, with his own mules. Snow, in his testimony, says that Pickens took care of them and fed them for him. He states that he never did go out on the range to feed or salt them, but occasionally would go out to see how they were doing. Pickens says that he cared for and looked after the mules for Snow, and that he agreed to put them in the pasture and field with his mules, and attend to them for him; that he attended to them as he did his own; that he fed and salted them, etc. It occurs to us that this sufficiently raised the issue as to the possession of the mules at the time they were taken, and the court should have submitted that issue to the jury.

Appellant asked the court to instruct the jury, under article 884, Penal Code, to the effect that if the jury believe from the evidence that appellant willfully took into his possession, and drove, used, or removed, the mules in question from their accustomed range, without the consent of

the owner, and with the intent to deprive the owner thereof, to find him guilty, and assess his punishment at confinement in the penitentiary for a term not less than two, nor more than five, years, or to fine him in a sum not to exceed $1000, or to assess against him both such imprisonment and fine. The court refused to give this charge, and appellant reserved his exception.

The contention of appellant is that, in every case where the evidence tends to show, under an indictment for theft, that the animals alleged to have been taken were driven from their accustomed range, without the consent of the owner, and with intent to defraud, it is incumbent on the court, when requested, to give such charge. He predicates this contention on said article 884, which makes the willful taking into possession by a person, and driving, using, or removing from their accustomed range, any live stock, not his own, without the consent of the owner, and with intent to defraud the owner thereof, theft, and the decisions of this court authorizing a conviction of said offense under said article under an ordinary indictment for theft. The article in question was passed in 1866, and has since been brought forward in the Codes, and the decisions of our courts authorize a conviction for willfully driving stock from their accustomed range under an ordinary indictment for theft. This was first decided by Judge Ogden, and the decision is based solely on a construction of article 3095, Paschal's Digest, which is now article 752, Code of Criminal Procedure, which includes different degrees of offenses under certain crimes; the particular offense here being theft, which includes "swindling, embezzlement, and all unlawful acquisitions of personal property punishable by the Penal Code." This decision appears to have been followed without question until Foster v. State, 21 Texas Criminal Appeals, 80. In that case, and in Smith v. State, 21 Texas Criminal Appeals, 133, the matter again underwent discussion, and the same view was taken of the question, but Judge Hurt dissented from the opinion of the court. Judge White in the Foster Case, supra, based his decision upon the statute making it a penal offense to willfully drive live stock out of the range, etc., and making said offense theft. We quote from his opinion as follows: "Every element of ordinary theft, as defined in article 724, Penal Code, is affirmatively declared in this provision of the law, except the single one, perhaps, that the taking must be with intent to appropriate the property to the taker's own use: First, there is a willful taking with intent to defraud, which is in every respect tantamount to a fraudulent taking; second, the removal or taking from the accustomed range, which is in law a taking from the possession of the owner, because stock in its accustomed range is in possession of its owner; third, the removal must be without the consent of the owner; fourth, the intent to defraud the owner, which is equivalent to an intent to deprive the owner of the value of the same; and, fifth, under the circumstances stated, such proof of removal could not be otherwise than an appropriation. No other essential element than these is found in ordinary theft, and the only difference is in the punishment of the two of-

fenses." Judge Hurt dissented in that case, and in the subsequent case of Smith v. State, supra, delivered a dissenting opinion, in which he took the position that theft and the willful driving of animals out of their accustomed range, etc., were distinct offenses, and that an ordinary indictment for theft did not apprise a defendant that he was to be tried for willfully driving animals out of their accustomed range, etc. As illustrative of this, he insisted that, as a necessary element of the latter offense, and essential to be proved, was the fact that the animal was removed from its accustomed range, and that there must be proof that the stock had an accustomed range, and, unless this proof is made by the State, a conviction could not be' had under this clause. The fact that the stock had an accustomed range was a matter of such importance that, if the State failed to prove this fact, it could not obtain a conviction, although all the other facts were proved; and he insisted that the mere fact that the offense was called theft did not make them one and the same; that acts and omissions, not names, constitute an offense, and they must be alleged in plain and intelligible language. Unquestionably it is our duty to follow former decisions, unless, on mature deliberation, they appear not to be founded upon correct legal principles. Since that time we are not aware that this· line of decisions has been questioned. But the matter is again presented, and we are confronted with the question whether or not we shall follow the rule on this subject heretofore laid down. It is a matter of vital importance, and, if we have been wrong, we should not hesitate to say so.

The mere fact that this offense is called "theft," if in fact it contains other elements than ordinary theft, and requires a different character of proof, would not authorize a prosecution of same under an ordinary charge of theft; and this, as we regard it, is the test or criterion by which this matter is to be judged. Subdivision 6, article 752, Code of Criminal Procedure, makes theft include "all unlawful acquisitions of personal property punishable by the Penal Code," and especially includes swindling and embezzlement. Yet it has been held that neither of these offenses, which are named, can be punished under an indictment for theft. This is based on the fact that they contain elements essentially different and distinct from those contained in theft. See Huntsman v. State, 12 Texas Crim. App., 619; Frank v. State, 30 Texas Crim. App., 381. Moreover, it has been held that the prosecution can not be maintained under article 877, Penal Code, where theft is by a bailee, under a general indictment for theft, simply because it contains distinctive elements constituting an offense not included in ordinary theft. See Brooks v. State, 26 Texas Crim. App., 184; Taylor v. State, 25 Texas Crim. App., 96, and see other authorities cited to note 1502, White's New Penal Code. And the same may be said of theft from the person. A prosecution can not be maintained for this offense under an ordinary indictment for theft. See Harris v. State, 17 Texas Crim. App., 132; Gage v. State, 22 Texas Crim. App., 123; Nichols v. State, 28 Texas Crim. App., 105. Yet all these are unlawful acquisitions of personal

property, and, by the language of the Code, would appear to be different degrees of offense included under a charge of theft.

Now let us examine this question in order to ascertain whether there is any essential difference in the elements which constitute ordinary theft and the elements which constitute the willful taking into possession, driving, using, or removal from its customary range any live stock, not one's own, etc. In the first place, we inquire if this statute merely has reference to ordinary theft, and the offense here outlined could be proven under a general indictment for theft, why the necessity of passing this statute at all? Evidently the Legislature had some purpose in its passage, and intended to apply some remedy which was not already provided for under existing law. In theft, the intent to steal must be contemporaneous with the act of taking into possession. This offense does not transpire when the possession is taken, but the taker must not only willfully take into possession, but he must then drive, use, or remove. Not only this, but the driving, using, or removing must be from its accustomed range. If it was ordinary theft, the instant the person takes it into possession, with the fraudulent intent to deprive the owner of the value thereof and to appropriate it to his own use, without the consent of the owner, he has committed theft. But in a case under this statute, no matter what his intent is, as long as he does not drive or remove the animal from its accustomed range, he has not committed the offense. This distinction, as we take it, is marked, and requires an entirely different line of proof. Evidently the Legislature had in mind some evil, aside from the ordinary crime of theft, and which was not included in that offense. Doubtless there were persons in the State who, under one pretense or another, were in the habit of driving stock from its accustomed range; perhaps sometimes driving stock of their own, which became mixed with others, it being inconvenient or troublesome to separate, they drove beyond their accustomed range. They may have had at the time no intent to steal said property, but subsequently, after it was removed from its accustomed range, disposed of it. Possibly it was to meet this character of wrongdoing that this statute was enacted, especially as by a subsequent statute it was provided that, if there was no intent to defraud, the offense might be treated solely as a misdemeanor. In addition, in an indictment for theft, the taking must be "fraudulent," but under this statute the act need only be "willfully" done. It will be readily seen that these two words mean different things. There is also a distinction between the intent in general theft and the intent under this statute. In theft the intent must not only be fraudulent, but it must be with intent to deprive the owner of the value of the thing taken, "and to appropriate the same to the use or benefit of the taker." But under this statute there need be no intent to appropriate to one's own use. It is said, however, that the intent to defraud is tantamount to an intent to appropriate to one's own use. We believe that this is a misconception. We can readily conceive of an intent to practice a fraud or defraud with-

39th Crim. Rep.—30

out an intent to absolutely appropriate to one's own use; and it will be conceded that an indictment for theft, without containing the clause, "with intent to appropriate to the taker's own use," would not be a valid indictment. We think it is a good rule, laid down by Mr. Bishop, that where offenses are of the same character, in order to test the question whether an indictment for one offense includes the other, the indictment for the one offense must contain all the essential elements of the other, otherwise the prosecution for the latter can not be maintained under the indictment; and, testing this matter by the above rule, we think it is clear that a general indictment for theft does not include a charge of willfully driving live stock from the range without the consent of the owner, etc. If this be not the rule governing this question, necessarily great confusion must result, and we think has resulted, from following the line of decisions on this subject before mentioned. The punishment for willfully driving stock out of the range is essentially different from the punishment provided for general theft, and may even be a misdemeanor. So that it follows, under the old rule, that under every indictment for general theft, where the proof shows that the property taken was live stock and that it was carried out of the range, it is incumbent on the court to give this statute in charge; and the court in this case, under the old rule heretofore discussed, should have given the requested charge. But we do not believe that, under correct legal principles, the old rule is correct, and we accordingly hold that the court did not err in refusing to give the requested charge, and the former decisions on this subject are hereby overruled. We now hold that, under an ordinary indictment for theft, a conviction can not be had under Penal Code, article 884, for willfully driving live stock out of the range, etc. But, for the errors heretofore discussed, the judgment in this case is reversed and the cause remanded.

*Reversed and remanded.*