### W. E. Bailey v. The State.

#### No. 3646. Decided November 9, 1906.

**1.—Theft of Cattle—Practice on Appeal—Bills of Exception—Statement of Facts—Declaration of Defendant.**

Where upon appeal, bills of exception were taken in connection with the statement of facts, the court will not wander through the entire record to find appellant's bills of exception, and the court earnestly recommends that bills of exception be taken separately and shaped so that they will present the exact point in issue. However, with reference to the matter presented; upon a trial for theft of cattle it was perfectly competent to prove by prosecutor what appellant said when he was accused of the offense, he not being under arrest, and any portion of the conversation that prosecutor may have used in order to make the statement of appellant intelligible.

**2.—Same—Variance—Possession and Ownership—Indictment and Proof.**

Upon a trial for theft of cattle, where the indictment alleged that the animal was taken from the possession of the owner, and the proof showed that the animal belonged to the person so alleged as owner; that he had a tenant on his place, and that both the owner and the tenant looked after the animal, and that the owner lived on the place about half his time; there was no error in the charge of the

court that the allegation in the indictment charging possession of the alleged stolen animal in said owner would be supported, even though the evidence may show or tend to show that his possession was a joint possession with said tenant; and there was no error to refuse the charge that if the animal was taken from the possession of the tenant to acquit the defendant.

**3.—Charge Refused—Special Defense—Purchase—Explanation.**

Where upon trial of theft for cattle, there was evidence that the defendant purchased the animal alleged to have been stolen, and that this proof came in the way of an explanation made by him at the time he was accused of the offense, it was error to refuse defendant's special charge on this issue.

**4.—Same—Charge Refused—Identification—Circumstantial Evidence.**

Where upon trial for theft of cattle, the case was one of circumstantial evidence and turned mainly on the identification of the head of the alleged stolen animal, a charge on circumstantial evidence alone was not sufficient, and the attention of the jury should have been directed to this matter of identification, as requested in defendant's charge.

**5.—Same—Misconduct of Jury—Affidavits of Jurors—Defendant as a Witness.**

Where upon motion for new trial, the matter of the misconduct of the jury was brought up by affidavits of some of the jurors, and which showed more than a mere allusion or reference to the fact that defendant did not go on the witness stand, and was used as a circumstance against him, the conviction could not be sustained.

Appeal from the District Court of Hill.    Tried below before the Hon. W. C. Wear.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*L. C. Hill* and *C. F. Greenwood,* for appellant.—On question of possession and ownership: White v. State, 33 Texas Crim. Rep., 95; Cunningham v. State, 27 Texas Crim. App., 479; Long v. State, 39 Texas Crim. Rep., 461.

*J. E. Yantis,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of cattle-theft, and his punishment assessed at two years confinement in the penitentiary.

This case depends on circumstantial evidence. The proof on the part of the State shows that prosecutor, S. C. Fain, had a farm in the country, some six or seven miles from Hillsboro. His tenant, Mitchell, lived on said farm, having rented the same for the year. Prosecutor spent a good deal of his time on the farm with his tenant. Appellant lived some half mile from said farm and pursued the business of a butcher; that is, he would buy cattle in the neighborhood, butcher them and sell the beef to the neighbors. The animal in question had been bought by prosecutor from a neighbor, some six or eight months prior to the alleged theft, placed in the enclosure on the farm and had broken out several times and gone back to where it was raised. Prosecutor finally got it up and put it in the little

pasture of about ten acres. The State's evidence shows that it was taken from there at night; that is, prosecutor says he saw it in the pasture a day or two before it was missed. As soon as the same was missed, search was made, and he went to the premises of appellant, there inquired about the animal, and asked to look at the hides he had recently butchered. Appellant informed him that he had sold the hides, but he could show him the heads. Prosecutor went with appellant, and among a number of others selected a head which he claimed was the head of his animal. He talked with appellant for some time, and accused him of the theft of his animal. Appellant denied this, but stated he would pay him for the animal to save trouble. The crucial testimony on the part of the State was the identification of the head of the animal by prosecutor and Mitchell. Appellant did not go on the stand himself, but proved by witnesses that it was impossible to identify the animal by its head and horns alone. It was further in evidence that when appellant was charged with the theft of the head of the particular animal, which prosecutor claimed to have identified, appellant stated he had bought the animal from which the head was taken, from Huffhines, who lived in the neighborhood. The proof showed that the animal Huffhines had sold to appellant, which was recently before the theft, was a steer yearling, something more than a year old, while the animal prosecutor claims was stolen, was a heifer yearling, some two years old. There was evidence pro and con as to the character of horns of such animals. The State's evidence tends to show that the horns of a steer yearling were thicker and blunter than those of a heifer yearling, which would be sharper. This is a sufficient statement of the case to discuss the questions raised on the trial.

There are no separate bills of exception to the introduction of testimony. However, there are some exceptions taken in connection with the statement of facts. As usual with this character of exceptions, it is difficult to determine whether they are taken in such manner as to require a review. We note that appellant in his brief argues an exception taken to the testimony of the prosecutor. The statement of facts, as we find it in the record, shows the bill to come up in this wise: After prosecutor found the head at appellant's butcher pen, he was asked to tell the conversation that ensued between him and appellant in regard to said yearling. Defendant objected to this, on the ground that the same was hearsay, was witness' opinion, and involved statements made by prosecutor to appellant that was in the nature of a moral lecture, and not pertinent to any issue in the case but injurious to appellant. The court admitted some of the statements made between prosecutor and appellant, but excluded some of his statements. For instance, as we cull from this statement of facts, the witness was asked to tell what he and appellant talked about. He answered, "I hated very bad to think he had treated me in that way after I had helped him along, as I had so stated to him, and repri-

manded him very severely, but as his father would do for his own good." This particular part of his testimony was excluded. The witness was then permitted to state, on an interrogation by the court, as follows: "Defendant said he did not do it. He said, 'I did not do it. And I think I can convince you that I have not done it!' I said, 'Well, if you are guilty and did do such a thing like that I did not know what ought to be done with you.' I may have used rougher language than that. He said, 'No, he had not,' and he never objected to showing me the head. I said, 'Although I know it is not patriotic, nor showing me a good citizen, but if you will pay me for the heifer, for the sake of your children,—I know the little fellow— your father and mother live by, I will face the law and let it go.'" That he further stated to him why he would let him go, he had been off on a spree at Waco. This last part of the witness' answer, however, seems to have been excluded. So far as we are advised from this sort of statement, assumed to be a bill of exceptions, we see no objection to the testimony admitted by the court. It was perfectly competent for the State to prove by prosecutor, or any other witness who was present, what appellant said when he was accused of the offense: he not then being under arrest, and any portion of the conversation that prosecutor may have used in order to make the conversation or statements of appellant intelligible. Of course, a moral lecture or mere statements of prosecutor not necessary to explain and make intelligible the statements of appellant would not be admissible. However, we see nothing here of an injurious character. We again repeat, what we have heretofore said, that we will not wander through the entire record to find appellant's bills of exception. Here the record is not even indexed, and when we find scattered over several pages, what is claimed to be a bill of exceptions, we can scarcely tell what was excepted to. We earnestly recommend that bills of exception be taken separately and shaped so that they will present the exact point in issue.

Appellant raises the question of variance between the allegation of possession and ownership in the indictment and the proof. The allegation in the indictment is that the animal was taken from the possession of S. C. Fain. Appellant maintains that the proof shows, if the animal was taken at all, it was taken from the possession of Will Mitchell. Appellant not only raises the question of variance as to the testimony, but asked the court to instruct the jury, in effect, if they believed that the animal was taken from the possession of Mitchell and not Fain, to acquit appellant. Instead thereof, the court instructed the jury that the allegation in the indictment charging possession of the alleged stolen animal in S. C. Fain would be supported, even though the evidence may show or tend to show that his possession was a joint possession with the witness, W. H. Mitchell. Appellant insists that this was erroneous. In our opinion the proof showed that the animal belonged to prosecutor

Fain; that Mitchell was his tenant, and the animal was kept on the place and was looked after by Mitchell; that the owner, Fain, also looked after the animal. Fain lived on the place about half his time. In Duncan v. State, 91 S. W. Rep., 572, we held that article 445, Code Criminal Procedure, did not relate alone to a technical joint ownership or joint possession, but referred as well to a case where the parties exercised a joint or common possession of the property. This case appears to have followed Cogshall v. State, 58 S. W. Rep., 1011; Tidwell v. State, 45 S. W. Rep., 1015; Coates v. State, 31 Texas Crim. Rep., 257; Scoville v. State, 81 S. W. Rep., 717. We do not believe there is any variance, nor do we regard the court's charge as erroneous. We do not believe that the court was called on to give appellant's special requested instruction on the subject of possession. Duncan's case, supra, was decided since the case of Long v. State, 39 Texas Crim. Rep., 461, and reviews the authorities on the subject of joint ownership and construes article 445. Under that construction we hold that where the fee of an animal alleged to have been sold is in A, and B is a tenant of A, and both exercise care, control and management of said animal that they are in effect joint possessors of said property, and the possession can be alleged in either.

Appellant complains because the court failed and refused to give his defense in charge to the jury. He maintains that his defense of purchase of the alleged animal, the head of which prosecutor undertook to identify, was the one purchased by him from Huffhines; and that this proof came in the way of an explanation made by appellant at the time he was accused of the offense, as well as by the testimony of the witness Huffhines himself. We have examined the court's charge and no such defensive matter was presented anywhere in the charge to the jury. We have examined the evidence on this question, and believe it requires such a charge. That is, if the court had given a charge on reasonable explanation or a charge on purchase, either would have been sufficient.

In this connection we also note that appellant requested a charge predicated on the identification of the head of the alleged stolen animal. The State's case, as heretofore stated, was one of circumstantial evidence and turned mainly on the identification of the head of the alleged stolen animal. Although the court gave a charge on circumstantial evidence, it occurs to us that inasmuch as the identification of the head found in appellant's possession was one of the principal controverted questions, that the attention of the jury should have been directed to this matter, and appellant's requested special instruction should have been given on this subject. As to whether or not appellant had prosecutor's consent to kill said animal, we believe that the charge given on this subject at the request of appellant was sufficient, and the court was not required to charge further as to this matter.

Appellant urges the misconduct of the jury. This is presented by affidavits of three of the jurors, to wit: J. A. Barr, who stated

that during the consideration of the case by the jury he heard some of the jurors speaking about defendant not testifying in the case, and some of them said they wondered why defendant was not put on the witness stand; and also C. B. Harvey and C. F. Barker, two other jurors, who made affidavits to the effect that while the jury was in the jury room considering their verdict, the question came up about defendant not testifying in the case; that his failure to testify was spoken of and generally discussed by the jury, and the idea was advanced that defendant must be guilty or he would have testified and given some explanation of the matter. That this was discussed by the jury and afterwards the verdict of guilty was agreed on and returned into court. The jury was summoned before the court, and most of them say that the matter was mentioned. Several did not hear it mentioned. A majority of the jury say that the matter was merely mentioned in the jury room, and a number state that what was said had no effect on them. What was said was evidently before the jury had reached any agreement as to their verdict. Some of them say that there were three or four ballots. Some of them say it was after the first ballot, and some say later. When the jury first went out they stood nine for acquittal and three for conviction. On the next vote they were tied, and subsequently they were eleven for conviction and one for acquittal, and finally there was a verdict of guilty. Several of the jurors testified to the effect that it looked like appellant was guilty, because he did not go on the stand. One juror said that he understood some one to say he had no witness, and they would not allow him to go on the stand. Another one said, some one said that it looked like he would have had some witness or would have testified himself, but believed that the parties said that would prove his guilt; that he ought to testify for himself; that it looked like he would make a statement; that he could not say exactly what was said. Another juror said, that he ought to have gone on the stand; that it proved his guilt; or he ought to have testified; it looked like he would have testified. This is, in substance, about what the record shows occurred in the jury room in regard to the defendant not testifying on his own behalf.

We believe that this shows more than a mere allusion or reference to the fact that appellant did not go on the witness stand. Here it seems the fact that he did not go on the stand, according to the testimony of some of the witnesses, was used as a circumstance against him. It was not only referred to, but it was said that he ought to have gone on the stand to have explained things. We believe that this comes within the rule which requires a reversal. Tate v. State, 38 Texas Crim. Rep., 262; Wilson v. State, 39 Texas Crim. Rep., 365; Thorpe v. State, 40 Texas Crim. Rep., 346; Cowan v. State, 16 Texas Ct. Rep., 60; Wooley v. State, 16 Texas Ct. Rep., 605.

For the reasons stated, the judgment is reversed and the cause remanded. *Reversed and remanded.*