VIRGIL McKNIGHT AND CHARLIE ELMORE v. THE STATE

No. 2408.    Decided May 14, 1913.

**1.—Theft of Cattle—Special and Real Owner.**

Where ownership was alleged in P. and the evidence showed that the special ownership was in J., and there was no allegation as to who was the real and who was the special owner, the judgment must be reversed. Following Taylor v. State, 62 Texas Crim. Rep., 611, and other cases.

**2.—Same—Venue—Charge of Court.**

Where, upon trial of theft of cattle, the question of venue was a serious one, and there was no direct evidence that the defendants were ever in possession of the cattle in the county of the prosecution, the court's failure to submit this issue in a proper charge to the jury was reversible error.

**3.—Same—Original Taking—Defensive Theories.**

Where, upon trial of theft of cattle, there was no direct evidence of an original taking, or that defendants had an interest in the alleged cattle, the court's failure to submit these issues was error.

**4.—Same—Other Transactions—Contemporaneous Offenses.**

Where, upon trial of theft of cattle, the contemporaneous theft of other cattle did not show that the defendant was connected therewith in a fraudulent way, the same should not have been admitted in evidence.

**5.—Same—Charge of Court—Possession.**

Where, upon trial of theft of cattle, the court charged the jury that while possession alone was not sufficient to convict, yet this could be weighed as a circumstance in determining the guilt or innocence of the defendant, the same was reversible error; especially where defendant did not claim the cattle.

**6.—Same—Other Offenses—Evidence.**

Upon trial of theft of cattle, it was error to admit in evidence testimony that defendant was indicted for the theft of the same cattle in the State of Oklahoma.

**7.—Same—Continuance—Practice on Appeal.**

Where the cause is reversed upon other grounds, the court's refusal to grant defendant's application for continuance need not be considered.

Appeal from the District Court of Childress. Tried below before the Hon. D. E. Decker.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Howard & Barrett* and *M. J. Hathaway* and *Walter E. Littimer,* for appellant.—On question of ownership: Frazier v. State, 18 Texas Crim. App., 434; Pippin v. State, 9 id., 269; Ledbetter v. State, 35 Texas Crim. Rep., 195; Tinney v. State, 24 Texas Crim. App., 112; Otero v. State, 17 S. W. Rep., 1081; Bailey v. State, 20 Texas Crim. App., 68; Briggs v. State, 20 id., 106; Littleton v. State, 20 id., 168; Alexander v. State, 24 Texas Crim. App., 126; Hall v. State, 22 id., 632; Massey v. State, 31 Texas Crim. Rep., 93; Thurmond v. State, 17 S. W. Rep., 1098; Clark v. State, 29 Texas Crim. App., 437; Eastland v. State, 59 S. W. Rep., 267.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—The indictment charges appellants with theft of three head of cattle, the property of J. S. Pritchard.

Reversal is urged because the evidence shows ownership in D. H. Jeeter. The cattle were placed in Jeeter's pasture by Pritchard in May, where they remained until their disappearance about the 28th of October. Jeeter saw them in his pasture on the afternoon of October 26th. The evidence by Pritchard and Jeeter is to the effect that Pritchard owned the cattle and placed them in Jeeter's pasture for pasturage purposes in May. He was to pay Jeeter 25 cents per head a month for keeping the cattle. Jeeter was to look after them, take care of them, and if they got out, get them back into the pasture. At the time the cattle were taken or disappeared from his pasture Pritchard had not paid the pasturage, for which Jeeter had a lien on the cattle. Under these circumstances Jeeter was the special owner as against Pritchard, the real owner. Article 5664 of the Revised Civil Statutes gave Jeeter a lien on the cattle for the pasturage, and Pritchard could not take his cattle until this pasturage had been paid. If Pritchard had taken the cattle

surreptitiously with intent to defraud Jeeter of the pasturage, he could even have been charged with the theft of the cattle from Jeeter under the terms of article 1335 of the Revised Penal Code. The real ownership could have been alleged in Pritchard and special ownership in Jeeter, but this was not done. Ownership was alleged only in Pritchard. Under all of our authorities ownership should have been alleged in Jeeter. Of course, as before stated, real ownership could have been alleged in Pritchard and special ownership in Jeeter. Taylor v. State, 62 Texas Crim. Rep., 611; Littleton v. State, 20 Texas Crim. App., 168; Frazier v. State, 18 Texas Crim. App., 434; Bailey v. State, 18 Texas Crim. App., 426; Alexander v. State, 24 Texas Crim. App., 126; Branch's Criminal Law, sec. 785, for collation of cases; Honea v. State, 56 Texas Crim. Rep., 278; Bryan v. State, 54 Texas Crim. Rep., 59. On this ground this judgment must be reversed.

The question of venue was a serious one and was as an issue fought out on the trial. Appellants' contention was that venue was not shown in Childress County, and the only testimony connecting appellants with the possession of the cattle was in Oklahoma. There is no direct evidence that appellants were ever in possession of the cattle in Childress County, nor even in Texas. The State proved by Weatherly that on the evening of the 28th, in Oklahoma, about a mile or more beyond the Texas line, he approached a herd of cattle of one hundred or more in possession of appellants. These cattle were being driven by appellants to Hollis, seven or eight miles beyond the Texas line in Oklahoma, for the purpose of shipment. They were the property of Mrs. J. B. McKnight, and in them appellants had no interest except as hired hands. Elmore was the hired hand of Mrs. McKnight at $20 a month, and had been since the previous June. Appellant McKnight was only assisting his mother at her request in regard to her cattle and any of her interests, she being a widow. At her request he went with these cattle for the purpose of shipping them to Kansas City for sale. The shipping contract reserved the right to unload them at Wichita, Kansas, for selling purposes; they were sold at Wichita, and the returns made to Mrs. McKnight. The amount of sale to her credit was about $1946 or $1947. The State's contention evidently must have been that appellants had the cattle in Childress County because they were in possession of the cattle in Oklahoma within a mile or mile and a half of the Texas line. There is also evidence in the record that after crossing the Texas line some "loose cattle" got into the herd, and the facts show "loose cattle" were in the habit of getting in herds being driven as this herd was, and often gave the owners of the herds trouble in cutting them out. This was all the direct evidence of appellants' possession of the cattle. That they may have been in the herd driven from Mrs. McKnight's ranch would be but an inference or deduction from the possession in Oklahoma. How these cattle got out of Jeeter's pasture the record is silent. They were there on the evening of the 26th, which was Saturday. They were in the herd driven by appellants in Oklahoma on the

evening of the 28th, two days later. Appellant McKnight proved a complete alibi, including Friday, Saturday, Sunday and Monday, so far as Jeeter's ranch was concerned, and the State offered no evidence to controvert this. No testimony was introduced to show that Elmore was ever off Mrs. McKnight's ranch at any time; the evidence is to the effect that he was her employe or hired hand, and worked about the place. The distance from Jeeter's place to Mrs. McKnight's was something like seven or eight miles. There was opportunity for the cattle to have escaped from Jeeter's pasture. There is also evidence which seems to be uncontroverted that appellant McKnight did not handle his mother's stock except occasionally at her request to assist her, and that two of his sisters managed, controlled and handled generally the cattle of Mrs. McKnight. The contention of appellants is that inasmuch as that was a serious question and fought out before the jury on the facts, the court's charge was not sufficient in failing to submit this issue to the jury. We are of opinion that this contention is correct.

Germane to this matter and closely related to it were two other questions: The first is, the appellants, in order to be guilty, must have been connected with the original taking in such manner as to make them principals; and the other is, that they were both acting in the capacity of hired hands for Mrs. McKnight, they having no interest in the cattle themselves. Neither of these questions were submitted to the jury, but should have been. Upon another trial the jury should be appropriately instructed upon both issues. These were very prominent issues under the facts.

Over the objection of the appellants the State was permitted to show that on the morning of the 28th of April some twelve or fifteen head of cattle were seen in what was called the eastern pasture belonging to Mrs. J. B. McKnight. They were observed by the witnesses approaching the pen where the cattle were being "cut," that is, separated in order to make up the herd of cattle for shipping purposes. They were approaching from the southeast direction and became the subject of discussion among the hands in the pen who were cutting the cattle as above stated. Inasmuch as the cattle to be shipped had to be driven through the eastern pasture in order to reach Hollis, it was decided to turn this bunch of twelve or fifteen head of "strange cattle" from the eastern pasture into the western pasture; these pastures were separated by a fence. There was anticipated trouble if the twelve or fifteen head of strange cattle were left in the eastern pasture of their mingling with the herd when they started with them to Hollis, therefore, either under the direction of appellant McKnight, or with his assistance, and for reason stated, these twelve or fifteen head of cattle were turned into the western pasture. Later on these cattle were claimed by other people and carried away. The evidence in regard to these cattle was permitted to go to the jury upon the theory that appellant McKnight had stolen them. He disclaimed having any knowledge of their presence in the pasture or how they got there. He was subsequently, however, indicted

for the theft of those cattle, but the case was dismissed by the district attorney.  Upon another trial this evidence should not go to the jury, unless the State can in some way connect appellant with these twelve or fifteen head of cattle, and further show that that connection was fraudulent.  Contemporaneous theft is sometimes admissible under certain circumstances, which is unnecessary here to discuss, but before this character of evidence is admissible the acts must not only be contemporaneous but must be fraudulent, the mere fact that appellant saw cattle in the pasture and turned them from one pasture to another would not of itself place him in fraudulent possession of the property. The cattle were already in his mother's pasture at the time of 'the discovery, and as far as this record is concerned that was the first intimation he had of the presence of the cattle in his mother's pasture. The admission, under the circumstances, of this testimony was erroneous.

Complaint is made of the charge on possession of the three head of cattle.  We think this criticism is correct.  The charge informed the jury that possession alone was not sufficient to justify the conviction, but the jury could weigh it as a circumstance with other established facts in determining whether the accused was guilty of the offense or not.  "If, therefore, the three head of cattle were stolen as charged, and defendants were found in possession of said cattle recently after the theft, then this possession and explanation, if any, of such possession would be proper for the consideration of the jury in determining the guilt or innocence of the defendants as they might think the same entitled to under all the facts and circumstances in the case.  This charge was on the weight of the evidence, and, further, instructed the jury also that they could weigh it in determining the innocence of the appellants."  This is not correct.  It is the guilt and not the innocence to be determined under such circumstances.  It will be observed that this is not a charge on reasonable explanation or the possession of property said to have been recently stolen.  If it was so intended it did not cover that question.  Exculpatory or reasonable explanation showing innocence must be shown false, otherwise an acquittal would follow. Of course, this explanation can be shown to be untrue, and it is further true that it may be viewed or weighed in the light of all the facts, and its falsity thus determined.  Appellant McKnight's explanation was that he did not know the cattle were in the herd until pointed out to him.  He did not claim the cattle, and was only driving and shipping them for his mother.  This phase of it was not even submitted to the jury in the charge; nor was a charge given with reference to unexplained possession.  It is unnecessary to go further into this matter. The charge was incorrect and did not fit the facts in the case.

Another question, the court permitted to be introduced against defendant McKnight the fact that he was indicted in Hollis, Oklahoma, for the theft of the three cattle set out in the indictment in this case. This was not admissible against him even for the purpose of impeachment.  That charge was for the identical cattle set out in this indict-

ment. It involved the same transaction, the identical matter. ·It would have been as correct and proper, legally speaking, to permit the State to introduce the indictment in this case for impeachment purposes as that found in Hollis, Oklahoma. The two indictments were for the same cattle. This would not be permissible.

The application for continuance is not discussed. The witness may appear at another trial.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*