## LEE JEMISON AND DAVID JACKSON v. THE STATE.

### No. 3988. Decided March 29, 1916.

#### 1.—Theft of Hog—Ownership—Possession—Variance—Charge of Court.

Where, upon trial of theft of a hog, the evidence showed that the party alleged to be the owner of said hog was the real owner, and that said hog was

in his actual control, care and management, although his hired hands assisted him therein, there was no variance in the proof and allegations as to the possession and ownership of the alleged stolen property, the court submitting said issue to the jury. Davidson, Judge, dissenting.

2.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.

Where, upon trial of theft of a hog, the argument of State's counsel was a reference to defendant's failure to testify, the same was reversible error.

3.—Same—Accomplice—Particeps Criminis—Charge of Court.

Where, upon trial of theft of a hog, the evidence did not raise the issue that one of the State's witnesses was an accomplice, there was no error in the court's failure to charge thereon. Davidson, Judge, dissenting.

Appeal from the District Court of Anderson. Tried below before the Hon. John S. Prince.

Appeal from a conviction of theft of a hog; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. E. Rose* and *O. J. Addington,* for appellants.—On question of variance: Cody v. State, 31 Texas Crim. Rep., 183; Peck v. State, 54 id., 81; McDonald v. State, 70 Texas Crim. Rep., 80; 156 S. W. Rep., 209; Bailey v. State, 18 Texas Crim. App., 426.

On question of argument of counsel: Flores v. State, 60 Texas Crim. Rep., 25, 129 S. W. Rep., 1111; Shaw v. State, 123 S. W. Rep., 691; Williams v. State, 48 Texas Crim. Rep., 75; Huff v. State, 51 Texas Crim. Rep., 441, 103 S. W. Rep., 394; Reinhard v. State, 52 Texas Crim. Rep., 59.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of argument of counsel: Vickers v. State, 169 S. W. Rep., 669; Pullen v. State, 70 Texas Crim. Rep., 156, 156 S. W. Rep., 935.

DAVIDSON, Judge.—Appellants were convicted of hog theft and given two years confinement in the penitentiary each, the ownership being alleged in W. C. Smith.

A question is presented as to proper allegation of ownership under the facts. This comes from an attack on the sufficiency of the evidence to support that charge in the indictment as well as refusal of the special requested instructions directing the jury to enter a verdict of not guilty on the variance between the proof and allegation of ownership. Smith, alleged owner, lived in the town of Malakoff, in Henderson County. He owned quite a lot of property, land and stock, about fifteen miles from Malakoff, some of it being in Anderson County. The particular point at which the animal was stolen was in Anderson County, therefore the prosecution was had in Anderson County. Smith testified he had never lived on his ranch or farm; that he visited it occasionally; sometimes every week or two; sometimes it would be two

months, and intervals between visits would be as much as three months. A man named Farmer was his employee and lived on the ranch. Smith testified that he knew nothing of the hogs. That Mr. Farmer was looking after his interests, and after the hog disappeared Farmer so informed him. He said: "I want to state that the man in charge of the place, Mr. Farmer, looked after the stock. I was there possibly once a month and wouldn't look at the hogs at all; this is why I didn't miss the hog. I could not say that I know of my own knowledge that a certain hog is gone. I couldn't say who took it because I wasn't there, what I know is hearsay. I do not know of what disposition Mr. Farmer may have made of that hog, nothing only what he told me. I said that sometimes I would go down there once a month and possibly not see the hogs while I was there, but Mr. Farmer was there looking after the hogs, cows and horses that were on the place. He had been there since 1908, in that capacity, in my employ. I lived in Malakoff, in the adjoining county. Malakoff is about thirteen miles from the county line between Anderson and Henderson counties. This particular part of my ranch is in Anderson County, something like two miles below the line. Sometimes I would go down to the ranch once a week and sometimes once in two months. I would be there every week for two or three weeks and sometimes would not be there but every two months, have been away from there as high as three months." On cross-examination, after having been recalled by the State, and after a conference with Mr. Bishop, the district attorney, he stated: "I don't think that the particular hog in question was ever on my place at Malakoff, not since they were little pigs, if then. I never lived on that ranch individually Mr. Crist has been with me off and on for about twelve years. I never did have that particular hog at Malakoff." He further states, "I don't remember of having seen the particular hog that was claimed to have been missing from my ranch. To say I ever saw the particular hog, I couldn't say, there was just a bunch of hogs in the hog pasture." In another portion of his testimony on recall, which is relied upon by the State to prove ownership in Smith as alleged and not in Farmer, he states: "Mr. Fannie Farmer was working for me on the ranch, looking after things. He did anything I wanted him to do. About the 14th day of May, 1914, Mr. Farmer only had such control and management and interest in the stock on this ranch as I would tell him. I reserved control of everything to myself. Mr. Farmer was not my overseer. He was just a day laborer. Mr. Farmer was just a day laborer and worked for so much a month. Sometimes he would collect his wages by the month and sometimes it would be two or three months."

We are of opinion that the position of appellant is correct. The ownership should have been alleged in Farmer. The fact that he worked under the supervision or general control of the absent owner would not change that position. All owners control their business—sometimes in person and sometimes through employed agencies. Here it is made to appear that the real owner of the property did not control

the ranch except in a general way, visiting it at intervals, and that Farmer was really in possession and control of things. Under the cases of Bailey v. State, 18 Texas Crim. App., 426; Frazier v. State, 18 Texas Crim. App., 434; Conner v. State, 24 Texas Crim. App., 245; McDonald, v. State, 70 Texas Crim. Rep., 80, 156 S. W. Rep., 209; Williams v. State, 42 Texas Crim. Rep., 18; Bryan v. State, 54 Texas Crim. Rep., 59, and Overturf v. State, 31 Texas Crim. Rep., 10, it would seem that Mr. Farmer had the control and management of this property. The indictment should have alleged ownership and possession in Farmer, and could have added if it was thought proper to do so, that while he was custodian and special owner, that Smith was the real owner. In that case want of consent of both would have to be alleged and proved. If general ownership of stolen property is in one man and possession, care and control in another, the indictment may allege the ownership in the general owner, but must allege the possession in the party in possession, so far as criminal pleadings are concerned, and it may be sufficient to allege ownership and possession both in the person having the actual care, control and possession of the property. In addition to quoted testimony, Mattie Speer testified that she lived on the ranch; that Farmer was boss and general overseer. That Mr. Farmer seemed to be and acted as the general manager and boss of the whole situation at the ranch. When tenants wanted anything they went to Mr. Farmer. When the horses or cattle and hogs or anything was to be seen about they went to Mr. Farmer for directions. They never went to Mr. Crist. That while she was on the ranch she was boarding with Jemison, one of the appellants. She further says that Mr. Farmer was their boss and superintendent to whom all parties on the ranch went for instructions. Mr. Farmer had the care, control and possession of the horses, cattle and hogs about the place. There are quite a number of other authorities that might be mentioned in this connection, but those mentioned are sufficient. We, therefore, conclude that the allegation of ownership and possession and want of consent, etc., should have been alleged in Farmer as contended by appellant.

It is also contended that the case should be reversed on account of remarks of one of the prosecuting counsel in which he used this language: "If it is not true that the defendants did not kill the hog, why was there no evidence to the fact that they did not kill the hog as was positively testified to by Henry Jackson?" It is contended that this was an allusion directly to the failure of the defendants to testify in their own behalf. An exception was taken. There was another remark made by prosecuting counsel, also to which exception was taken. That remark was as follows: "These two men have practically confessed their guilt because they brought no evidence here to deny it." In support of these propositions various authorities are cited, which we think sustain appellant's contention. Flores v. State, 60 Texas Crim. Rep., 25, 129 S. W. Rep., 1111; Wallace v. State, 81 S. W. Rep., 966; Barnard v. State, 86 S. W. Rep., 760; Shaw v. State, 57 Texas Crim. Rep., 474, 123 S. W. Rep., 691; Williams v. State, 48 Texas Crim.

Rep., 75; Huff v. State, 51 Texas Crim. Rep., 441, 103 S. W. Rep., 394; Reinhard v. State, 52 Texas Crim. Rep., 59, and for authorities generally see Branch's Crim. Law, sec. 849, with the authorities already cited and there cited. Bearing upon this phase of the case, Henry Jackson testified for the State, that he was present when the hog was killed, and connects the two appellants with the killing and cleaning of the hog and its appropriation. Quoting from his testimony he says: "Nobody else was there besides me and those two negroes. David Jackson was present when Lee hit the hog with a rock. They cleaned it with a knife, with David Jackson's knife." He further states: "Me and Lee and David were up there chopping corn; that was some time year before last in corn chopping time. We were all chopping corn in the same field; it was about 11 o'clock, just before dinner; they had fresh meat for dinner. I helped eat it; they put it on the table; I eat it; if they hadn't put it on the table I wouldn't have eat it. I don't know right exactly when was the first time that I told this; I ain't talked nothing about this. I first told it to Mr. Smith and another fellow, I don't know his name now. He lives in Anderson County, one arrested him; they come down there and arrested Lee, a tall man. I don't know whether I would know him or not. It was the sheriff, he was a tall man. He and Mr. Smith were the only men that I ever spoke to about it, and that was about a year or over after the hog was killed. The reason that I never told it for a year or more afterwards and after these boys had left the farm, I ain't never told nobody nothing; how comes me to tell Mr. Smith and Mr. Guinn, Mr. Fannie Farmer had already told Mr. Smith, I suppose." He further states: "The men that had me up there promised me that I wouldn't be prosecuted if I would tell this like I have told it on the stand."

So it would seem that this witness, Henry Jackson, who testified for the State, was only one who witnessed the killing of the hog, and made himself a particeps criminis in the transaction. The same day the hog was killed he testified he ate some of the alleged stolen hog; was present when it was done, and did not mention it for a long time. He excludes the presence of everybody except himself and the two defendants. This evidence raises the issue, first, that Jackson was a particeps criminis and needed corroboration in order to prove the State's case, and, second, it excludes the presence of anybody and everybody to the taking of the hog at the time it was taken except himself and the two defendants. So it will be seen that the court should have charged with reference to accomplice testimony; and it excludes the presence of everybody except himself and the two defendants. With this statement from the record, it would seem to be practically evident that the two defendants were the only people who could contradict Henry Jackson, the State's witness, on any fact connected with the taking. This being true, the remarks of the prosecuting officer should be regarded as a reference to the failure of these defendants to testify. There was nobody else by whom they could prove anything except by themselves and the State's witness, Henry Jackson. Under these authorities it is clear to our

minds these remarks of the prosecuting officer was a reference to the failure of the defendants to testify. They could bring no witness to show they did not kill the hog except themselves. They did not testify in the case. Therefore, these remarks were references to appellants' failure to take the stand and testify. There was nobody else by whom appellants could have proven to the contrary of what Jackson said.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE, and HARPER, JUDGE.—We concur in the reversal of the case on the sole ground of the argument of the district attorney alluding to the appellants' failure to testify.

We are clearly of the opinion that the testimony of the owner of the alleged stolen hog was ample to show, not only that he was the real owner, but also in the possession of the hog in that he was in the "actual control, care and management," of it, when it was stolen, if it was stolen, and that there was no variance in the proof and allegations as to the possession. The court specifically submitted the question to the jury in his charge as follows:

"Possession of the person so unlawfully deprived of property is constituted by the exercise of actual control, care and management of the property, whether the same be lawful or not.

"In order to warrant a conviction in this case, the jury must find from the evidence, beyond a reasonable doubt, that the hog when taken (if you find it was taken), was from the possession of W. C. Smith. If the hog was in the possession of Fannie Farmer or George Crist when taken (if it was taken), or if you have a reasonable doubt thereof, you will acquit the defendants," which was all that was necessary, and having given that charge should not have given those or either of them requested by appellants on the subject.

We also think the testimony does not make the State's witness Henry Jackson a *particeps criminis* as principal, accomplice or accessory, or otherwise a party to the offense.

The judgment will be reversed on the sole ground of the objectionable argument of the district attorney excepted to.

*Reversed and remanded*