### Roy Hartman v. The State.

#### No. 5077. Decided June 27, 1919.

**1.—Theft of Horse—Ownership—Possesson—No Variance—Charge of Court.**

Where, upon trial of theft of a horse, the indictment alleged ownership and possession in the real owner, who was an heir in the estate to which the property belonged, and the evidence showed that he was the manager of

the ranch from which the horse was taken, and that another person helped him who worked for wages, and who was employed under his immediate direction, there was no variance between the allegation and the proof with reference to ownership and possession, and no error in the court's charge in submitting this question, or in the court's refusal to submit the requested charge thereon. Following Bailey v. State, 50 Texas Crim. Rep., 398, and other cases.

### 2.—Same—Temporary Possession—Charge of Court—Requested Charge—Intent.

Where, upon trial of theft of a horse, the defendant in part of his testimony claimed temporary taking, although he contradicted this in other parts of his testimony, and the court gave a proper charge thereon, there was no error in refusing the requested charge which was incorrect.

### 3.—Same—Insanity—Burden of Proof—Sufficiency of the Evidence.

Where, upon trial of theft of a horse, the defendant pleaded insanity, and the court correctly charged the jury that the burden of proof was upon the defendant to make out this defense, and there was no evidence that defendant did not possess sufficient mind at the time of the offense that such act was wrong, etc., and the evidence was otherwise sufficient to sustain the conviction, there was no reversible error.

### 4.—Same—Rehearing—Amending Original Opinion—Ownership.

See Court's opinion on rehearing, modifying the same, in conformity with the facts in the instant case, on the question of ownership and possession, and reviewing the decisions thereon which, however, do not change the conclusion reached in the original opinion.

### 5.—Same—Consent—Case Stated—Joint Possession.

Where it was not claimed that defendant laid any sort of claim to the consent of anyone to take the horse in question, and both the real owner and manger of the ranch and his servant were away from the ranch on the day the horse was actually taken, and both had a joint right of possession, the allegations in the indictment were sufficient and met by proof.

Appeal from the District Court of Tom Green. Tried below before the Hon. C. E. Dubois.

Appeal from a conviction of theft of a horse; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Anderson & Upton,* for appellant.—On question of charge of court on ownership and possession: Bonner v. State, 58 Texas Crim. Rep., 195; Jamison v. State, 79 Texas Crim. Rep., 313, 184 S. W. Rep., 807; Bradshaw v. State, 44 Texas Crim. Rep., 222.

Upon question of temporary use: Carroll v. State, 50 Texas Crim. Rep., 485.

*E. A. Berry,* Assistant Attorney General, 'for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Tom Green County for the offense of horse theft and his·

punishment fixed at two years confinement in the penitentiary.

It appears from the evidence that a certain horse, saddle and bridle were taken from a ranch in Coke County, Texas on March 14, 1917 by appellant and that said property was recovered on the 16th of that same month near Big Springs, in Howard County about nine miles distant from the point where same was taken. The horse was found in a pasture about two miles from Big Springs, appellant having let down the fence near the gate and put the horse in the pasture over the fence which was fixed up afterwards; the saddle and blanket were found under a culvert in the road near said pasture and the bridle and a rope were found under another culvert not far distant. Appellant was arrested on said last mentioned date and went with the officers and showed them where the saddle and bridle were hidden. At some time after his arrest, but just when is not clear, appellant told the sheriff of Tom Green County, Mr. Allen, that he "just rode the horse up there and was going to send him back." On the way from the place of taking to Big Springs, appellant fell in with the witness Henkle who tried to trade for the horse in question but appellant refused and said the horse belonged to him and his sister. It appears that the appellant rode along by this witness' wagon for several miles, and at one point, as they were about to meet a car with several men in it, appellant rode off a short distance from the road till the car had passed, then came back and told the witness he was dodging officers.

Appellant made several objections to matters of procedure, but his main defense appeared to be temporary insanity and he introduced two of his sisters, his brother, his wife and two other witnesses who testified, in substance, that appellant had been thrown from a horse some years before and injured, and that since said accident he had not seemed right, was subject to spells and loss of memory, and they detailed several instances. Appellant himself testified that he remembered nothing of the taking of the horse in question, nor anything that occurred about that time or afterwards, until he came to himself in jail. Rebutting this, the State placed on the stand ten or a dozen witnesses, including the sheriff who arrested appellant and the deputy sheriff who accompanied him from Big Springs to San Angelo and who said they talked with him practically all the way down. Also the jailer and a number of other witnesses who gave in detail their familiarity and association with appellant at the time of, before and after the taking, and all of whom say they at no time discovered anything wrong with him mentally. Two physicians were also placed on the stand by the State and gave testimony adverse to appellant's contention, as to the effect of such injury as was claimed by appellant. One of these physicians had tended him at the time he received his hurt and he denied that appellant had received any such injury as he and his family claimed.

There arose on the trial a contention as to whether the owner-

ship of the alleged stolen animal was correctly set out in the indictment and proven. The indictment alleged said horse as being the property of J. A. March, taken from his possession without his consent, etc. The proof showed that the animal belonged to the March estate and that Mrs. March, mother of J. A.; J. A. himself and several brothers and sisters of J. A., were the interested parties and owners thereof. All of said heirs, including J. A., lived in San Angelo. J. A. March had charge of the ranch properties, stock, etc., belonging to said estate and gave much of his time to looking after the same, having a foreman on this particular ranch named Thornton who was paid wages, and when J. A. was not there, said foreman looked after the ranch and the various interests there. On the day this horse was taken. J. A. March was in Ft. Worth at a convention, and Thornton had left the ranch and spent the day some twenty miles distant at San Angelo.

Appellant's first contention is that the court should have given his special charge No. 4, which is as follows: "You are further instructed as part of the law of this case, that if you find from the evidence, that John Thornton had the care, possession and control of the alleged stolen horse, at the date alleged in the indictment, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict not guilty."

The court, in his main charge, followed the usual form in such cases on the question of ownership; that is, that theft was the taking from the possession of another, or from some one holding same for him, without his consent, etc.; he also gave the following specially requested charge by the State: "At the request of the State, you are further charged that when property is owned jointly by two or more persons the ownership thereof may be alleged in the indictment to be in either of them and in like manner the custody, care and control thereof is in two or more persons jointly, the ownership and possession may be alleged in the indictment to be in either of them.

"So in this case, if you find that John Abe March was a joint owner of the horse in controversy it was not necessary for the State to prove the want of consent of the other joint owners, and further, if you find that the horse in controversy was in the joint care, custody and control of John Abe March and other persons, then it is not necessary for the State to prove the want of consent of such other persons " The giving of this charge is also complained of in this same connection.

Article 457 of our Code Criminal Procedure is as follows: "Where one person owns the property, and another person has the possession, charge or control of the same, the ownership thereof may be alleged to be in either. Where property is owned in common, or jointly, by two or more persons, the ownership may be alleged to be in all or either of them. When the property belongs to the estate of

a deceased person, the ownership may be alleged to be in the executor, administrator or heirs of such deceased person, or in any one of such heirs. Where it is the separate property of a married woman, the ownership may be alleged to be in her, or in her husband. Where the ownership of the property is unknown to the grand jury, it shall be sufficient to allege that fact." It will be observed that it is specifically provided in said article that when property belongs to an estate, ownership may be laid "in any one of the heirs." There can be no question in the instant case but that the property belonged to an estate and that J. A. March, the alleged owner, was one of the heirs, and that said allegation in the indictment was in exact accord with the statute. Conceding then that J. A. March was the legal owner within the terms of our theft statute, and that his foreman Thornton, had the actual care, possession or control of the horse when taken, it will be at once seen by reverting to the first paragraph of said article 457, that in such case the ownership can be laid in either J. A. March or Thornton. The requested charge mentioned was erroneous. Thornton may have had a special ownership in said animal, not at all inconsistent with the general ownership of J. A. March, such special ownership resulting from his care, control and possession of the horse, but the jury finding him to be such special owner would not justify appellant's acquittal on that ground, for our statute is plain that in such case ownership, with its attendant rights, lack of consent, etc., may be alleged to be in either March or Thornton.

In the Bonner case, 58 Texas Crim. Rep., 195, cited by appellant, the general owner testified that he left the care, control and management of the cattle in question with Mr. Newland, and the proof showed that said owner was out of the State at the time the theft was committed. In the Jemison case, 79 Texas Crim. Rep., 313, 184 S. W. Rep., 807, also cited, the alleged owner Smith said that he would visit his farm occasionally, but that he knew nothing of the hogs on the place, that he had a Mr. Farmer out there who had had charge of the place for many years, who looked after the horses, hogs and cows that were on the place.

We are of opinion that the facts in said cases are much stronger in support of the special ownership, than in the instant case.

Regarding this contention, however, we wish to say further that unless there be some theory of the defense, borne out to some degree by testimony, based on a claim of consent, or right to take the property given by some person having some character of ownership of the same that we fail to see any concern over the question of ownership which could interest one accused of theft, further than to see that the alleged owner had enough right to such entitlement, to prevent any further carving in the transaction after the conviction or acquittal. In the absence of any claim of the consent of Thornton to the taking, what further concern is the ownership of the property to appellant except to demand that such character of ownership,

general or special, be alleged and proven as will protect him against further jeopardy? None that we can see. Certainly, it would hardly be contended that if appellant be convicted of theft of a horse from J. A. March, general owner thereof, that he could ever be in danger of another conviction for theft of said horse from Thornton, the special owner.

Appellant further contends that the court's charge upon what is denominated in his brief ''temporary taking'' is erroneous. We suppose this theory of the defense was based on the testimony of Sheriff Allen and Deputy Green that the appellant at some time between his arrest at Big Springs and his incarceration at San Angelo, said that he intended to bring or send the horse back in a few days. The court's charge on this point was as follows:

''You are further charged that in order to convict the defendant of the crime of theft, you must be satisfied from the evidence, beyond a reasonable doubt, that he not only did appropriate the horse to his own use, as alleged in the indictment, but that the intention of the defendant to defraud the owner of the value thereof (if you find that such intent existed) existed at or before such taking. And in this connection, I further charge you, that if you should find that the horse alleged to have been stolen was taken by the defendant for his own temporary use and benefit and that, at the time he took said horse (if he did take same) he intended to return the horse to the said John Abe March, or if you have a reasonable doubt thereof, then the defendant would not be guilty.''

Appellant asked a special charge, which was refused, which is as follows:

''You are further instructed that if you believe from the evidence that the defendant took the horse at the time and place alleged in the indictment, and after a temporary use of said horse, abandoned him with no intention of further using or appropriating him to his own use, that he would not be guilty of theft of said horse, or if you have a reasonable doubt thereof, then you will find him not guilty.''

The special instruction does not present a correct proposition of law. The court's charge was correct. Under our law, any taking of property without the consent of the owner and with the present intent to deprive the owner of its value and to appropriate the same by the taker, is theft and it is uniformly held that asportation is not necessary in order to make out the offense; and with equal uniformity it is held that the return of the property after arrest or charge made of such theft is not a voluntary return within the contemplation of our statutes. Appellant's statement was not made until he was arrested for the theft, after he had ridden the horse ninety miles, and after he had claimed to the witness Henkle that it belonged to him and his sister. His intentions toward the property which were of any moment on this trial were only those in his mind when the property came into his possession. In the Carroll case, 50 Texas Crim. Rep., 485, which

is the only case cited by appellant on this point, the accused was fleeing from pursuing officers who were on his tracks with hounds. He took a horse, rode him some miles, abandoned him and bought another continuing his flight. This court, in that case, properly held that the charge to the effect that if Carroll took the horse with no intention of permanent appropriation but with the intent to use the same temporarily, or if the jury had a reasonable doubt in regard to such matter they should acquit, was correct. This is substantially what was said in the instant case. True, the court, in this case, told the jury that if appellant took the horse for temporary use and intended to return it to the owner, or if they had a reasonable doubt thereof, they should acquit. Appellant is in no position to object to the court's substituting his intention to return the horse to the owner for the intention of abandonment that was referred to in the Carroll case, supra, for it was appellant's own statement that he intended to bring or send back the horse, which alone supports any theory in the instant case, other than straight theft, and he is bound by his own statement.

The court corectly told the jury that the burden was upon the appellant to make out his defense of insanity, and many cases have been approved by this court in which the charge instructed the jury that such defense must clearly be made out. There was no evidence on the part of appellant of the fact that he did not possess sufficient mind at the time of the taking of said horse, to know that such act was wrong and one that he ought not to do, except his own statement that he knew nothing of the occurrence.

We have carefully examined the record but find no error, and the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

June 27, 1919.

LATTIMORE, JUDGE.—This case is before the court on appellant's motion for rehearing. After quoting a portion of the original opinion, in which the propriety and legality of certain expressions regarding allegation and proof of ownership and possession, was questioned, appellant cites a large number of authorities to show that we were in error in our original opinion. As will appear later herein, the original opinion will be modified because same was not in conformity with the facts in the instant case. We have examined at length the authorities set forth in said motion as supporting the correctness of appellant's contention that the trial court should have given his special charge quoted in the original opinion, to the effect that if one Thornton was in the care, control and management of the horse

in question at the time it was taken, they should acquit the accused; and further, that the court was in error in a special charge given at the request of the State with regard to the joint ownership and possession of said Thornton and John A. March, who was the real owner. We give below a condensed statement in most of the cases cited by appellant:

House v. State, 19 Texas Crim. App., 238. The real owner lived in Yorktown; was aged and infirm, and paid no attention whatever to his tattle. Held: that ownership and possession were properly laid in his son-in-law who had the actual care, management and control of same.

Atterberry v. State, 19 Texas Crim. App., 406. Thomas and his brother owned certain cattle jointly. Thomas testified he had the exclusive care, custody and control of same. Held: this established ownership under our statute. Not necessary to allege or prove his brother's want of consent.

Thurmond v. State, 17 S. W. Rep., 1097. Reversed solely because of a defective indictment for theft of property from a corporation.

Wright v. State, 34 S. W. Rep., 274. Theft of diamond ring given by parent to minor child, same kept in box to which only minor had key. Held: would be better practice to have two counts, one charging ownership in parent, and one in minor child. Reversible error in failure to charge on explanation of possession of recently stolen property.

Bailey v. State, 18 Texas Crim. App., 426. Theft of horse belonging to John Douglass; ridden to church by nineteen year old son on night of theft; taken from church. Held, ownership and possession properly laid in John Douglass. Not necessary to allege or prove possession or want of consent of son.

Bailey v. State, 20 Texas Crim. App., 76. Property charged to have been taken from possession of owner, W. H. Perkins. Proof showed he had been away from home two months; before leaving had placed his cattle in charge of others to look after, feed and care for; Held, fatal variance.

Briggs v. State, 20 Texas Crim. Rep., 107. Alleged owner was a lunatic, not able for years to attend to business; lived with and cared for by her father. Held: ownership and possession should have been laid in the father.

Littleton v. State, 20 Texas Crim. App., 175. Alleged owner was very old man. Evidence showed that his son-in-law held the cattle on shares, and had for some time had exclusive control and management of same. Reversed for variance between allegation and proof.

Hall v. State, 22 Texas Crim. App., 632. No fact stated. Simply held that evidence showed the alleged owner was not in possession, and there was variance.

Alexander v. State, 24 Texas Crim. App., 127. One Wilson was the alleged owner. Fernandez had the care, management and control.

Both testified that Fernandez did have such actual care, control and management. Allegation of ownership and possesson in Wilson. Held, not supported by proof.

Massey v. State, 19 S. W. Rep., 909. Allegation that cattle were taken from possession of Roach, who was holding same for Caldwell, the owner. Proof showed Roach at one time had Caldwell's cattle, but not for a year before the alleged theft. Held, verdict unsupported by the evidence.

McKnight v. State, 70 Texas Crim. Rep., 470, 156 S. W. Rep., 1188. Cattle of Pritchard were placed in pasture of Jeeter in May and stolen in October. Jeeter was to look after and care for the cattle, and to be paid twenty-five cents per head per month. Ownership and possession were alleged in Pritchard. Held, erroneous.

Honea v. State, 56 Texas Crim. Rep., 278, 119 S. W. Rep., 851. Mrs. Donnell owned a farm ten or twelve miles from her residence. Keeter was her tenant on same. In August she left the State for seven weeks; before leaving she sent her horses down to Keeter to keep for her while she was gone; he was to exercise such care and control as that no one was to use them; they were taken while Mrs. Donnell was out of the State. Held: possession should have been alleged in Keeter. This significant statement appears in the opinion of the presiding judge of this court: "It will be noted that there was no relation of servant and master between Keeter and Mrs. Donnell so as to retain possession in her."

Bonner v. State, 58 Texas Crim. Rep., 195, and Jamison v. State, 79 Texas Crim. Rep., 313, 184 S. W. Rep., 807, cited, were both reviewed in the original opinion.

Branch's Ann. Code, Sec. 2447, is also cited and referred to in support of said position of appellant. Thereunder is cited by Mr. Branch the case of Bailey v. State, 50 Texas Crim. Rep., 398. In that case Fain owned a farm several miles from his residence, on which farm he spent about half his time with his tenant Mitchell. A yearling was stolen at night. It was contended by the accused that the special ownership and possession was in Mitchell, and a charge very similar to the one in the instant case was requested, and a charge very similar to one given in the instant case was given. This court, speaking through Judge Henderson, said:

"Appellant raises the question of variance between the allegation of possession and ownership in the indictment, and the proof. The allegation in the indictment is that the animal was taken from the possession of S. C. Fain. Appellant maintains that the proof shows, if the animal was taken at all, it was taken from the possession of Will Mitchell. Appellant not only raises the question of variance as to the testimony, but asked the court to instruct the jury, in effect, if they belived that the animal was taken from the possession of Mitchell and not Fain, to acquit appellant. Instead thereof, the court instructed the jury that the allegation in the indictment charg-

ing possession of the alleged stolen animal in S. C. Fain would be supported, even though the evidence may show or tend to show that his possession was a joint possession with the witness, W. H. Mitchell. Appellant insists that this was erroneous. In our opinion the proof showed that the animal belonged to prosecutor Fain; that Mitchell was his tenant and the animal was kept on the place and was looked after by Mitchell; that the owner, Fain, also looked after the animal. Fain lived on the place about half his time. In Duncan v. State, 91 S. W. Rep., 572, we held that article 445, Code Criminal Procedure, did not relate alone to a technical joint ownership or joint possession, but referred as well to a case where the parties exercised a joint or common possession of the property. This case appears to have followed Cogshall v. State, 58 S. W. Rep., 1011; Tidwell v. State, 45 S. W. Rep., 1015; Coates v. State, 31 Texas Crim. Rep., 257; Scoville v. State, 81 S. W. Rep., 717; we do not believe there is any variance, nor do we regard the court's charge as erroneous. We do not believe that the court was called on to give appellant's special requested instruction on the subject of possession. Duncan's case, *supra,* was decided since the case of Long v. State, 39 Texas Crim. Rep., 461, and reviews the authorities on the subject of joint ownership and construes article 445. Under that construction we hold that where the fee of an animal alleged to have been stolen is in A, and B is a tenant of A, and both exercise care, control and management of said animal that they are in effect joint possessors of said property, and the possession can be alleged in either.''

A very marked similarity will be observed in the instant case and the case just cited, and we are unable to see any difference in the legal questions involved.

In Graves v. State, 42 S. W. Rep., 300, one Graves, father of appellant therein, was alleged to be the owner and possessor. He was away for two months, and had hired one Tate to look after his cattle while he was away. The alleged theft occurred during his said absence. It was contended that possession at least should have been alleged in Tate. Judge Hurt said: ''Tate was simply the servant of Graves, and did not have that possession, management and control of the property as would require the indictment to charge possession in him.'' The case was affirmed.

In Bryan v. State, 54 Texas Crim. Rep., 61, a nineteen year old boy had charge of the alleged stolen animal. Ownership and possession were alleged in his father. In holding this to be correct, it is stated in the opinion: ''He was under the direction and control of his father, and in so far as the statute in regard to ownership is concerned, merely acting as a servant or employee.''

Our statement in the original opinion as follows: ''Conceding then that J. A. March was the legal owner within the terms of our theft statute, and that his foreman Thornton had the actual care, possession and control of the horse when taken, it will be at once seen by

reverting to the first paragraph or said article 457, that in such case the ownership can be laid in either J. A. March or Thornton," was inaccurate and uncalled for by the facts, and same will be withdrawn, and the following inserted in said opinion instead: "It will be seen from the facts that Mr. Thornton might have had possession, care and control of the horse; same was merely that of a servant and employe of J. A. March, the real owner, and was joint with that of said March." We further observe that March testified: "I have been manager of this March ranch since the fall of 1911, practically six years. As manager of the ranch during March, 1917, I stayed out at the ranch and worked some. I stayed out there about half the time, . . . I sell and trade the stock off the ranch, . . . . I gave my personal attention to the ranch and its management during the time inquired about." Both March and Thornton testified that Thornton worked for wages. Evidently his relation to the property was that of servant and employe under the imediate direction of the real owner, who was a joint possessor. The requested charge and facts of the case are almost identical with that of Bailey v. State, 50 Texas Crim. Rep., 398, *supra.*

Complaint is made of expressions in the original opinion to the effect, substantially, that one accused of theft has no further interest in the allegation of ownership than to see that same is sufficiently alleged to protect against a second prosecution for the taking of such property, unless there be claim of consent to the taking. It is said by Judge White in Frazier v. State, 18 Texas Crim. App., 443, which is cited by the appellant, in substance, that it is only necessary to allege the possession and want of consent in the proper possessory owner, and the court says in that connection: "If, under such circumstances, the accused has the consent of the real, actual or general owner, then it is his business to show it. For, 'on the trial of any criminal action, when the facts have been proved which constitute the offense, it devolves upon the accused to establish the facts and circumstances on which he relies to excuse or justify the prohibited act or omission.' (Penal Code, Art. 51.) The State was not bound to allege, neither was it bound to prove, the want of consent of the real owner." We do not think our opinion is subject to the criticism that it shifts the burden of proof in a proper case, or in any way changes the rules under the former opinions of this court. We have taken pains to give enough of the facts of most of the, cases cited in the motion and relied on by the appellant, to show that same were wholly different from the facts of the instant case. It is not claimed that appellant in this case laid any sort of claim to the consent of anyone to take the horse in question. Both Thornton and March were away from the ranch on the day the horse was actually taken. Thornton came back that night, and March seems to have returned either the next day or the day following. Under the facts both appear to have a joint right of possession, and March was the real

owner.  The allegations in the indictment were sufficient and met by the proof.

The original opinion will be modified as herein indicated, and the motion for rehearing overruled.

*Overruled.*