IRA HANEY V. THE STATE.

No. 14005. Delivered February 25, 1931.
Rehearing Denied April 1, 1931.

The opinion states the case.

*Will S. Payne,* of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for two years.

It is alleged in the indictment that appellant "did then and there unlawfully and fraudulently take one head of cattle, belonging to Dr. A. Carmicheal, from the possession of the said Dr. A. Carmicheal, without the consent of the said Dr. A. Carmicheal, and with the intent then and there to deprive the said Dr. A. Carmicheal of the value of the same and to appropriate it to the use of him the said Ira Haney." Appellant made no motion to quash the indictment, but now contends that its allegations are insufficient to show that it was apellant's intent at the time of the taking to deprive the owner of the value of the property. We think it is clearly and directly alleged that appellant had the intent at the time of the taking to deprive the owner of the value of said one head of cattle. It is observed that the indictment follows the form laid down by Mr. Branch in his Annotated Penal Code (section 2549).

Possession of the stolen animal was alleged to have been in Dr. A. Carmichael. Appellant contends that the proof fails to support the allegation as to possession. Dr. Carmicheal lived in the town of Granbury. He owned 650 acres of land, which was situated about 9 miles from town. Part of the land was in cultivation and some of it was used as a pasture for cattle belonging to Dr. Carmicheal. Touching his visits to his farm, the witness said: "I live in the town of Granbury, Hood County. This pasture is about 9 miles from here; as to how often I go down to the pasture, I have been averaging about twice a week; and later about twice a month, selling, and working over there."

John Moulder lived on the farm, having rented the cultivated land from Dr. Carmicheal. Under his contract he was permitted to keep his (Moulder's) cattle in the pasture. Dr. Carmicheal testified that Moulder agreed to keep up the fences and to look after his (Carmicheal's) cattle. In one place in his testimony on cross-examination,

Dr. Carmicheal testified that his cattle were in the care of John Moulder. On redirect-examination he testified as follows: "John Moulder did not have any interest in my cattle or my pasture, in the world, except as a renter; he had a bunch of cattle in it, a few head."

On recross-examination the witness testified: "Mr. Moulder had control, he controlled that pasture down there for me; I mean by that, he looked after my cattle in it. He had the custody of the cattle; they were in his custody."

Upon being examined by the court, the witness said: "I had the management of these cattle altogether, except he was to keep up the fence; and see that none got out. That was his job. I had the management, the control, and care of those cattle."

We quote further from the cross-examination of the witness: "It is true that John Moulder was down there and had this place rented from me. He put his cattle in that pasture, and kept up the fences. I told him that I wanted him to keep the fences up, and not let the cattle get out. I had cattle to get out in the adjoining south pasture, and he had gone after them frequently, and what he was to do was what I wanted him to do in that respect. I sometimes went down there oftener than twice a month. He would look after the cattle; but as to his having the management, control and care of the cattle, he, of course, he would bring them back when they got out, and fix the fence, and that was the contract with him."

Appellant did not object to the charge of the court for its failure to submit the question as to whether the actual control, care and management of the stolen animal was in Moulder. He insists that we should hold under the facts that possession of the stolen animal was improperly alleged in the true owner, Carmicheal. In other words, it is his position that the proof shows that Moulder had the actual control, care and management of said animal. The facts are not unlike those developed in the case of Yarbrough v. State, 107 Texas Crim. Rep., 127, 295 S. W., 927. In that case the indictment charged the theft of cattle alleged in possession of W. A. Bobbitt. It appears that Bobbitt had about five sections of land four miles from Paducah, in which town he lived. Part of the land was pasture, part in cultivation. The appellant's father had farmed part of Bobbitt's farm land for several years, being a renter on shares. Bobbitt had about 150 head of cattle in his pasture, which he from time to time employed the appellant's father to haul feed to, and, occasionally, when away for any considerable time, he would get appellant's father to look after the cattle. It was the general understanding and agreement between appellant's father and Bobbitt that Bobbitt was to look after the fences and windmills. The appellant's father testified to renting the farm land from Bobbitt on the halves and looking after the cattle when Bobbitt was away for any considerable length of time.

It was not claimed that the appellant's father had any right of disposal of the cattle, or to move them from place to place, or to do anything to or with them, except to see that they were fed and if they got out of the pasture, to bring them back. The trial court submitted the issue of management, care and control to the jury. This court reached the conclusion that the jury were warranted in concluding that possession was properly alleged in Bobbitt. See also Hartman v. State, 85 Texas Crim. Rep., 582, 213 S. W., 936. In the present case, it might be that appellant would have been entitled to have the issue as to the actual control, care and management submitted to the jury. He sought no instruction touching this matter, but contented himself with requesting the court to instruct the jury to acquit him. We feel unauthorized, under the facts, to sustain appellant's contention.

The evidence is sufficient to support the conviction. Dr. Carmicheal missed his cow in March. He found her in appellant's possession in July. Appellant pointed her out to the sheriff and said that she belonged to Dr. Carmicheal, but declared that he had won her from the injured party's son in a game of dice. The doctor's son testified that he had never engaged in a game of dice with appellant, and said that he did not deliver the animal in question to appellant, and had not given him permission to take said animal. Appellant did not testify in his own behalf and offered no witnesses.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—As stated in the original opinion, the indictment charges that the property was fraudulently taken. This is in accord with Art. 1410, P. C., also Willson's Cr. Forms, p. 327, Form No. 640, and likewise with the form prescribed in Branch's Ann. Tex. P. C., Sec. 2423. The criticism in the motion is deemed untenable.

The contention that the failure to charge on the law of the possession of recently stolen property was fundamental error is likewise untenable. Assuming such a charge to have been appropriate, its omission was waived by the failure to demand it at the time of the trial. See Art. 660, C. C. P., 1925.

The motion is overruled.

*Overruled.*